## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| BIOURJA RENEWABLES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:23-cv-01280-MMM-RLH |
| v. | ) | |
| | ) | |
| GOJO INDUSTRIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT GOJO INDUSTRIES, INC.'S SUMMARY JUDGMENT MOTION
## (ORAL ARGUMENT REQUESTED)

Defendant GOJO Industries, Inc. ("GOJO") respectfully moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. There is no genuine dispute as to the material facts, and GOJO is entitled to judgment as a matter of law on Plaintiff BioUrja Renewables, LLC's ("BioUrja") breach of contract claim set forth in Count One of its First Amended Complaint ("FAC").

## I.     INTRODUCTION

There is only one claim remaining in this case—BioUrja's breach of contract claim—and the Court should enter judgment as a matter of law on that claim in GOJO's favor for a number of reasons.[1]

First and foremost, GOJO did not breach the contract at issue in this case. Per the contract's unambiguous language, GOJO's deadline to perform had not expired when BioUrja terminated the contract, as BioUrja's 30(b)(6) witness expressly admitted at deposition. Moreover, even if the contract's language is ambiguous (and it is not), GOJO's interpretation of the contract controls based on both the undisputed record and the legal doctrine of *contra proferentem*. And finally,

---

[1] The Court previously dismissed BioUrja's promissory estoppel claim. (*See* ECF No. 16.)

irrespective of how the contract is interpreted, the undisputed facts establish that BioUrja waived any right to require GOJO to have performed thereunder before BioUrja terminated the contract. Accordingly, GOJO respectfully requests that the Court enter judgment in its favor on BioUrja's breach of contract claim (Count 1).

A.  SUMMARY OF THE FACTUAL BASES FOR THIS MOTION

GOJO manufactures Purell hand sanitizer. During the COVID-19 pandemic, hand sanitizer manufacturers like GOJO could not produce enough product to satisfy consumer demand and experienced a nearly unlimited demand for their products. To keep up with demand, GOJO needed to secure a source of high-grade ethanol, a key ingredient in Purell. Thus, on June 3, 2020, GOJO entered into a contract with Vantage Corn Processors LLC, a unit of Archer-Daniels-Midland Company (collectively, "ADM") and predecessor in interest to BioUrja, for the supply of 100 million pounds of Ethanol (the "Contract").[2]

The contracting parties understood that GOJO's Ethanol needs could fluctuate based on factors that included whether pandemic-related demand for hand sanitizer would remain high. Thus, although the parties hoped GOJO would consume the entire 100 million pounds of Ethanol within one calendar year, ADM proposed contractual language—to which GOJO agreed—reflecting what would happen if GOJO did not perform under the contract within one calendar year. The resulting contract provided as follows:

- "Volume" clause: 100 million pounds;
- "Price" clause: $0.54/pound;[3]
- "Term" clause: January 1, 2021 – December 31, 2021;
- "Other" clause, modifying the "Term," which stated, as relevant here, that GOJO "has the option to extend this contract volume through February 28, 2022. After the grace

---

[2] The high-grade ethanol "Product" supplied under the Contract was "SDA 3C 190 Proof (ADM Product Code 017643)." For simplicity, this Motion refers to the Product as "Ethanol."

[3] The Contract was stated in both pounds and gallons. The "Volume" and "Price" terms also provided for 14,740,566 gallons at $3.67/gallon, respectively.

period, 1% of price will be added to the contract each month until the contract is consumed."

Thus, just as BioUrja conceded in paragraph 9 of the FAC: "The Contract contemplated a scenario in which GOJO did not take and pay for the full volume of the Product during the term, in which [case] a 1% per month price increase would take effect from the end of the Contract term until GOJO utilized all of the Product."[4]

Consistent with the "Other" clause, the undisputed evidence concerning the contracting parties' contemporaneous correspondence and subsequent conduct, and BioUrja's conduct after it assumed the Amended Contract, demonstrates that the parties understood that the one-calendar-year "Term" was aspirational, reflecting nothing more than the parties' wishes, hopes, and dreams. The parties knew that the market for hand sanitizer, and the concomitant demand for Ethanol, was subject to change. Accordingly, the Agreement provided flexibility—GOJO could purchase Ethanol when it desired, and ADM and then BioUrja had price protection (in the form of a 1% per month price escalator) if GOJO did not purchase the entire Volume before the grace period expired.

GOJO, ADM, and BioUrja operated as intended and as the Agreement provided. GOJO communicated its projected Ethanol needs to ADM (and then BioUrja), and ADM (and then BioUrja) adjusted its operations accordingly. After the grace period expired, and even after the parties reached the 1% per month price escalator stage (*i.e.*, after February 28, 2022), BioUrja continued to communicate with GOJO to make clear its understanding that GOJO still could perform. On October 13, 2022, though, BioUrja terminated the Agreement and demanded millions of dollars from GOJO, despite: (1) BioUrja's lack of notice to GOJO of any claimed breach; and

---

[4] The parties amended the Contract (the "Amended Contract") to reflect that GOJO was exercising the "grace period" provided for in the "Other" clause. The 1% price escalator in the "Other" clause remained unchanged. On November 1, 2021, BioUrja assumed the Amended Contract when it purchased the Vantage Corn Processors plant in Peoria, Illinois, from ADM. The Contract and Amended Contract are referred to collectively in this Motion as the "Agreement."

(2) BioUrja's own understanding and admission that before BioUrja terminated, GOJO had not defaulted.

### B.    SUMMARY OF THE LEGAL BASES FOR THIS MOTION

GOJO is entitled to summary judgment for three reasons:

*First*, under the Agreement's plain and unambiguous language, GOJO was not required to purchase the entire 100 million pounds of Ethanol by the end of the "Term" (whether December 31, 2021 under the Contract, or the end of the grace period—February 28, 2022—as set forth in the Contract and memorialized in the Amended Contract). Instead, if GOJO did not purchase the entire 100 million pounds by February 28, 2022, the price would increase by 1% per month until GOJO consumed the entire 100 million pounds. Nothing in the Agreement set an actual deadline by which GOJO was required to perform.

*Second*, even if the Agreement is ambiguous about whether there was a deadline by which GOJO had to perform, GOJO still is entitled to summary judgment. The undisputed contemporaneous correspondence between the contracting parties, their conduct both before and after entering into the Agreement, and BioUrja's post-assignment conduct, all confirm that the parties knew and understood that GOJO was permitted to perform under the Agreement even after the grace period expired on February 28, 2022. The ***only*** consequence for not completing performance before that date was price increases. Further, under the doctrine of *contra proferentem*, any contractual ambiguity—specifically, in the "Other" clause—is construed against ADM (and, by extension, BioUrja) as the drafting party.

*Third*, contract interpretation aside, ADM and then BioUrja waived any right to require GOJO's performance under the parties' Agreement before at least 2023. That much is evidenced by ADM's and BioUrja's repeated, explicit, and undisputed interactions with GOJO, including as corroborated by their internal and external communications. In fact, the ***only*** time anyone insisted

4

on GOJO's performance before 2023 was in the very letter through which BioUrja terminated the Agreement. By that time, ADM and BioUrja already had waived any alleged default by GOJO.

**C.    RELIEF SOUGHT**

Based on the undisputed facts and as required as a matter of law, GOJO asks the Court to enter judgment in its favor on the remainder of BioUrja's Amended Complaint, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

GOJO sets forth the following numbered list of undisputed material facts that form the basis for this Motion, and all exhibits and relevant documentary evidence are attached:

### A.    THE ORIGINAL CONTRACT EXPRESSLY CONTEMPLATED THAT GOJO COULD CONTINUE TO PURCHASE ETHANOL THEREUNDER AFTER FEBRUARY 28, 2022.

1.    On June 9, 2020, ADM and GOJO entered into the Contract. (*See* Am. Complt., Ex. A (ECF No. 8-1); Fife Dep.,[5] Ex. 5; ▮▮▮▮▮▮ Ex. 2.)

2.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮

3.    BioUrja played no role in negotiating the Contract's terms. (*See* Fife Dep., 41:18-20) ("Q. And BioUrja did not negotiate this version of the contract. Correct? A. This is correct.")

4.    BioUrja had no knowledge of either contracting party's intent when those parties negotiated the Contract. (*See* Fife Dep., 42:2-4 ("Q. And so, therefore, they do not know what ADM or VCP was intending with this contract. A. Correct."); *id.*, 42:22-25 ("Q. So then is it fair to say that BioUrja does not know what GOJO's intent was when entering into this contract? A. Correct.").)

5.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[5] Jordan Fife is the President of BioUrja Trading and was BioUrja's corporate representative for certain deposition topics. (Fife Dep., 13:4-20.) Cited excerpts of Mr. Fife's deposition are attached as **Exhibit 1**.

[6] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮

6.      The Contract included the following terms:

| Product: | SDA 3C 190 Proof (ADM Product Code 017643) |
|---|---|

\*          \*          \*

| Volume: | 14,740,566 gallons (100,000,000 lbs) |
|---|---|
| Term: | January 1, 2021 – December 31, 2021 |
| Price: | $3.67/gal rail delivered ($0.54/lb) |

\*          \*          \*

| Other: | If Gojo has a formula change that would require 40B 190 Proof (ADM Product Code 017653), buyer has the option to use this contract volume.  Pricing for SDA 40B 190 proof is $3.57/gal ($0.525/lb) rail delivered Barberton. |
|---|---|
| | Buyer has the option to extend this contract volume through February 28, 2022.  After the grace period, 1% of price will be added to the contract each month until the contract is consumed. |

(Am. Complt., Ex. A.; Myers Dep.,[7] Ex. 2; Fife Dep., Ex. 5.)

7.      Illinois law governs the contract. (Am. Complt., Ex. A., ¶ 10; *see also* Court Order

on Motion to Dismiss, ECF No. 16 at 4.)

8.      When ADM and GOJO were negotiating the Contract, GOJO was unsure of what

its actual Ethanol needs would be during the 2021 calendar year and, therefore, asked ADM to

include a provision that would allow GOJO to continue performing the Contract beyond the 2021

calendar year:

---

[7] Abbey Myers was the Account Manager for Industrial Ethanol in both her role at ADM and her role at BioUrja. In those roles, she sold ethanol to large strategic accounts. (Myers Dep., 25:4-15.) Cited excerpts of Ms. Myers' deposition are attached as **Exhibit 3**.

```
14      Q.   Was this standard language, this "Buyer
15   has the option" through "is consumed," was this
16   standard language that was in other contracts?
17      A.   It was not --
18      Q.   Do you know --
19      A.   -- that I --
20      Q.   Go ahead.
21      A.   I don't -- I don't recall it being in
22   other contracts.
23      Q.   Do you know why it made its way into
24   this contract?
25      A.   I would say that GOJO, obviously, had a

1    huge change in their demand, and their certainty
2    of demand for '21 was -- was probably a little
3    less than in a normal year because of the COVID
4    demand.  And we would not have put this in if
5    they would not have -- I think they wanted a
6    surety of knowing how they would have to deal
7    with excesses if they didn't use it.  So this is
8    what we came up with.
```

(Miller Dep.,[8] 54:14-55:8; *see also* LeMaster Dep., 41:3-13.)

9.   ███████████████████████████████████████

███████████████████████████████████████

---

[8] Sean Miller was the General Manager of Beverage, Industrial, and Export Alcohol at BioUrja Renewables between November of 2021 and June of 2022. As part of his responsibilities, he oversaw all contracts. (Miller Dep., 21:8-22:25.) Prior to joining BioUrja, Sean Miller was the General Manager of Beverage, Industrial, and Export at ADM (*Id.*, 24:22-25:5) Cited excerpts of Mr. Miller's deposition are attached as **Exhibit 4**.

10.

11.

12.

---

[9] Haithum Chughtai is the strategic sourcing manager of chemicals at GOJO and was in that role during the relevant time period. His responsibilities include negotiating high-grade ethanol contracts, including the Agreement at issue. (Chughtai Dep., 33:7-35:9; 50:1-9.) Cited excerpts of Mr. Chughtai's deposition are attached as **Exhibit 5**.

13. ████████████████████████████████████████████████████

█████████████████████████████████████████████



██████████████████████████

**B.**    **THE AMENDED CONTRACT LIKEWISE EXPRESSLY CONTEMPLATED THAT GOJO COULD CONTINUE TO PERFORM AFTER FEBRUARY 28, 2022, WHICH WAS CONFIRMED BY THE PARTIES' CORRESPONDENCE.**

14.    In or about February 2021, it became apparent that GOJO would not need the entirety of the contracted-for volume of Ethanol during calendar year 2021. (Myers Dep. 145:6-10; 149:24-150:22; 160:6-20.)

15.    On February 1, 2021, Ms. Myers (on ADM's behalf) sent an email to Mr. Chughtai (on GOJO's behalf) about changing the dates of the Contract to more accurately reflect GOJO's estimated timeframe for pulling Product and performing under the Contract:

```
10        Q.   Okay.  And going back to that e-mail,
11   which was Exhibit 3, you said to Haithum in
12   this -- in this top e-mail --
13        A.   Uh-huh.
14        Q.   -- We can adjust as needed once you
15   have a clearer picture, but at least this more
16   accurately reflects the --
17        A.   Uh-huh.
18        Q.   -- shipment as we see it today --
19        A.   Uh-huh.
20        Q.   -- is that right?
21        A.   Yes.
22        Q.   So was this VCP, ADM, and GOJO's
23   attempt to try and reestimate a -- a time period
24   when GOJO would pull the product?
25        A.   Yes.
```

(Myers Dep., 42:10-25, Ex. 3.)

16.     On February 2, 2021, GOJO (through Mr. Chughtai) agreed with the proposal presented by ADM (through Ms. Myers). (Myers Dep., Ex. 4.)

17.     On February 2, 2021, Ms. Myers sent Mr. Chughtai the Amended Contract, which she signed on ADM's behalf. (*See* Am. Complt., Ex. B (Doc. #8-2); Myers, Dep., 40:8-41:12.)

18.     As relevant here, the Amended Contract included the following terms:

| | |
|---|---|
| **Volume:** | 14,740,566 gallons (100,000,000 lbs) |
| **Term:** | ~~January 1, 2021 – December 31, 2021~~ March 1, 2021 – February 28, 2022 (AM 2/2/21) |
| **Price:** | $3.67/gal rail delivered ($0.54/lb) |

*          *          *

| | |
|---|---|
| **Other:** | If Gojo has a formula change that would require 40B 190 Proof (ADM Product Code 017653), buyer has the option to use this contract volume.  Pricing for SDA 40B 190 proof is $3.57/gal ($0.525/lb) rail delivered Barberton. |
| | Buyer has the option to extend this contract volume through February 28, 2022.  After the grace period, 1% of price will be added to the contract each month until the contract is consumed. |
| | 2/2/21 – Amended term to reflect estimated shipment |

(Am. Complt., Ex. B.)[10]

---

[10] Strikethrough and red text are exactly as presented in the original version of the Amended Contract.

19.    Ms. Myers added language to the "Other" provision as follows: "Amended term to reflect estimated shipment." (*Id.*) She used the word "estimated," not deadline. (*Id.*)

20.    The parties understood that GOJO could perform on the Amended Contract after February 28, 2022, but the price GOJO would pay would increase by 1% per month, until it pulled 100,000,000 pounds of Ethanol:

```
17         Q.      So then, according to this provision,
18    Other, after February 28th, 2022, 1 percent of the
19    price would be added to the contract each month
20    until the contract is consumed; is that right?
21                    MR. BERNICK:  Objection; form.
22    Document speaks for itself.
23         A.      Correct.
```

(Fife Dep., 47:17-23; *see also* Myers Dep., 43:3-45:23)

21.    ADM understood that the Amended Contract provided no deadline for GOJO to pull all the contracted-for Ethanol, provided GOJO paid the 1% per month price increase. (Myers Dep., 47:12-48:20)

22.    As of August 19, 2021, ADM also understood that GOJO would be performing on the Amended Contract through at least calendar year 2022:

```
4          Q.      So at least in August of 2021, ADM was
5     projecting that GOJO would be pulling under the
6     contract through 2022; is that right?
7                    MS. EMERY:  Objection, speculation.
8          A.      So when I would have calculated this, I
9     would have made an assumption that if they
10    started pulling the contract, the -- the contract
11    volume would have lasted them through all of
12    2022.
```

(Myers Dep., 51:4-12; *see also* Myers Dep., Ex. 6 (email from Ms. Myers stating: "Big wildcard is GOJO…I'm assuming their 2021 will last through 2022, but they are unable to provide ANY forecast as of today. Majority of our customers are in the same situation.").)

23.    As of September 14, 2021, ADM understood that GOJO would be performing on the Amended Contract through at least 2023:

| Message | |
|---|---|
| **From:** | Chughtai, Haithum [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=65321C6DAEA143189D8A024E7CD0C359-CHUGHTAI, H] |
| **Sent:** | 9/14/2021 7:21:49 PM |
| **To:** | Myers, Abbey [Abbey.Myers@adm.com] |
| **Subject:** | Re: forecast |

Hello Abbey,

I can call you tomorrow to offer some more insight but it is likely if we keep our entire current contracted volume we will be going into 2023.

I believe we recently did issue you a PO for October.

Sent from my iPhone

> On Sep 14, 2021, at 2:56 PM, Myers, Abbey <Abbey.Myers@adm.com> wrote:
>
> Hi Haithum,
> I know the answer but wanted to check. Im being asked to update how we have your contract broken out. Right now I have it scheduled / forecasted for approx. 23 cars per month. But with no August and Sept shipments I probably need to readjust. Based on what you see / hear do you think we are looking at this contract going through Q1 2023 at this point or still end by Dec 2022? I just need to try my best to weight it to the best of my / our ability.
>
> Thank you!

(Myers Dep., Exs. 7-8; *see also* Myers Dep., 54:4-55:14, 56:24-58:11.)

24.    Representatives of ADM and GOJO negotiated the Amended Contract's terms; BioUrja played no role in negotiating the Amended Contract's terms, nor did it have knowledge of either party's intent when negotiating the Amended Contract:

```
 5        Q.      Okay.  So the term was amended on
 6    February 2nd of 2021.
 7                      Do you see where it says that?
 8        A.      Yes.
 9        Q.      And that was before the acquisition.
10    Right?
11        A.      Correct.
12        Q.      So BioUrja does not know what ADM or VCP
13    intended when they made that change.
14                      Is that fair to say?
15                      MR. BERNICK:  Objection; form.
16    Calls for speculation.
17        A.      Correct.
```

(Fife Dep., 45:5-17; *see also* Myers Dep., Ex. 4.)

25.    ADM drafted the Amended Contract; GOJO did not draft the Amended Contract.

(Myers Dep., 193:6-194:22.)

### C.    BioUrja Acquired the VCP Peoria Plant and Assumed the Amended Contract.

26.    On November 1, 2021, BioUrja acquired the VCP Peoria ethanol plant. (Fife Dep.,

11-15; ███████████████ ; Myers Dep., 63:25-64:4.)

27.    As part of that transaction, BioUrja assumed the Amended Contract with GOJO.

(Fife Dep., 23:22-24:3; FAC, ¶ 11.)

28.    Ms. Myers, who primarily handled GOJO's account with ADM, moved to BioUrja

with the acquisition and continued to be the primary contact for GOJO's account then with

BioUrja. (Fife Dep., 16:18-17:2; Myers Dep., 27:8-12.)

29.    BioUrja told GOJO that with the acquisition, it anticipated very little change from

current operations:



(Myers Dep., Ex. 9.)

30.     Before BioUrja assumed the Amended Contract, ADM never told GOJO that GOJO was required to complete its performance under the Amended Contract by any particular date or be in default. (█████████████████ Myers Dep., 54:18-55:19.)

31.     ADM acknowledged that GOJO could continue to perform under the Amended Contract into 2023. (Myers Dep., 54:18-55:19, 56:24-58:11; Myers Dep., Exs. 7-8.)

32.     Between BioUrja's assumption of the Amended Contract and October 13, 2022 (when BioUrja terminated the Amended Contract), BioUrja never told GOJO that it was required to complete its performance under the Amended Contract by any particular date or be in default, nor did it otherwise provide GOJO with notice that BioUrja contended GOJO was in default. (Myers Dep., 85:15-20; 99:9-15; Fife Dep., Ex. 33 (the Termination Letter).)

**D.    BioUrja Recognized that GOJO Could Continue to Perform After February 28, 2022.**

33.    On March 21, 2022, BioUrja (through Ms. Myers) sent GOJO (through Mr. Chughtai) an email reflecting the application of the 1% price escalator for Ethanol that GOJO would order that month. (Myers Dep., Ex. 58.)

34.    Specifically, Ms. Myers stated as follows:

> Hi Haithum,
>
> Hope you had a nice weekend!
>
> I know we've had several discussions and have not been able to come to a fair resolution and I'm sure we will continue to discuss. <u>Per the language in the contract, I need to start the carry calculation this month.  Do you want me to send you an amended contract each month with this calculation?</u>
>
> Please let me know what you'll need from your side.

(*Id*. (emphasis added).)

35.    Ms. Myers noted that BioUrja was applying the 1% per month price escalator, and she offered to send GOJO updated pricing each month moving forward. (*Id*.)

36.    BioUrja also attached to that email an updated version of the contract reflecting the price increase pursuant to the terms of the Amended Contract, which provided, in relevant part:



(Myers Dep., Ex. 5 (text in red in the original version of the exhibit).)[11]

37.     According to BioUrja's internal documents, ██████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

38.     Following BioUrja's acquisition of the VCP Facility, Ms. Myers emailed several

people at BioUrja regarding the contracts BioUrja was assuming and told them the GOJO contract

would likely continue into 2023:

| | |
|---|---|
| **Message** | |
| From: | Abbey Myers [Abbey.Myers@biourja.com] |
| on behalf of | Abbey Myers <Abbey.Myers@biourja.com> [Abbey.Myers@biourja.com] |
| Sent: | 11/8/2021 11:15:58 AM |
| To: | Curtis Putland [Curtis.Putland@BioUrja.com]; Mayank Maheshwari [mayank.maheshwari@biourja.com]; Sean Miller [Sean.Miller@biourja.com]; Omar Gimenez [Omar.Gimenez@biourja.com] |
| CC: | Pritesh Patangia [pritesh.patangia@biourja.com] |
| Subject: | Re: Regarding open contract |

On Industrial only (can't speek for Beverage) -

The timeframes do not mean much rnow given our customers cannot tell us what / when they will pull - those are best projections on when the volume would be pulled and have not been updated since September per the breakout.

I think the main thing we need to make sure is the total balance remaining is correct. Curt - the FCGO sheet sent would be a good way to view this as well as it has the actual timeframe the contract was covered for vs. when we think they will pull it (good example is GOJO. contract was for 2021, however will likely last into 2023 potentially).

(Myers Dep., Ex. 10;[12] Myers Dep., 68:1-5.)

39.     No one from BioUrja responded to Ms. Myers' email saying that GOJO's

performance under the Amended Contract could not be completed in 2023. (Myers Dep., 70:3-7

("Q. And did anyone -- or anyone from BioUrja that you sent this e-mail to respond back and say,

no, GOJO can't pull until 2023? A. You -- meaning -- no, not to my knowledge.").)

---

[11] Ms. Myers testified that the reference to "3/21/21" was a typographical error and should have read March 21, 2022, which would have been consistent with the enclosure email. (*See* Myers Dep. 44:4-10.)
[12] The highlighting existed on the document as produced in discovery.

40.    As of August 7, 2022, BioUrja understood that GOJO would continue performing under the Amended Contract into 2023. In fact, BioUrja was "stringing [GOJO] a long [sic]" in order to keep GOJO "on the hook" for the Amended Contract:

| Message | |
|---|---|
| **From:** | Jordan Fife [jordan.fife@biourja.com] |
| on behalf of | Jordan Fife <jordan.fife@biourja.com> [jordan.fife@biourja.com] |
| **Sent:** | 8/7/2022 7:03:23 PM |
| **To:** | Abbey Myers [Abbey.Myers@biourja.com]; Omar Gimenez [Omar.Gimenez@biourja.com]; Jack Healy [jack.healy@biourja.com] |
| **CC:** | Scott Carey [scott.carey@biourja.com]; Amit Bhandari [amit.bhandari@biourja.com]; Curtis Putland [Curtis.Putland@biourja.com] |
| **Subject:** | GOJO Update |

Morning All,

I spoke with Robert from Gojo yesterday about their plant, exporting via drums and our existing contract with them.

- Their plant will not produce any gallons for at least 9 months. The damage was "extensive" in their explosion.
- Gojo wants to export in steel drums, plastic is hazardous due to static electricity. They have requested the spec they need to hit for Africa, Abbey is looking into that.
- They recognize they have a contract, they will pull, they said they should start pulling in 2023

I am stringing them a long in order to keep them on the hook for their existing high priced contract. We do need to make sure it never goes in their favor. In other terms, this is not a free option where they can wait until their contract comes back into the money.

(Carey Dep., Ex. 16.)[13]

41.    In August 2022 BioUrja understood that the Amended Contract was in effect. (*Id.*)

42.    Even as of October 4, 2022, BioUrja still considered the Amended Contract to be "significantly delayed," but not in default, and was estimating that GOJO would continue performing under the Agreement into as late as 2025:

---

[13] The highlighting existed on the document as produced in discovery. Scott Carey was the President of BioUrja Renewables, LLC and the Managing Director of BioUrja Group. (Carey Dep., 14:13-23.) Cited excerpts of Mr. Carey's deposition are attached as **Exhibit 6**.

| Message | | | | |
| --- | --- | --- | --- | --- |
| **From:** | Adam Gillon [adam.gillon@biourja.com] | | | |
| on behalf of | Adam Gillon <adam.gillon@biourja.com> [adam.gillon@biourja.com] | | | |
| **Sent:** | 10/4/2022 11:45:13 AM | | | |
| **To:** | Shek Jain [shek.jain@biourja.com] | | | |
| **Subject:** | ahead of your GOJO discussion | | | |

Here are our contract defaults/delays.

| Contract Number | Company | FOB Price ($/gal) | Gallons | Value ($) | |
| --- | --- | --- | --- | --- | --- |
| **High Likelihood Default Contracts** | | | | | |
| | | | | | |
| **Significantly Delayed Contracts** | | | | | |
| I4324 | GOJO INDUSTRIES | $  3.25 | 13,273,330 | $  43,138,323 | pushing volumes to 2023-25, carry class of 1% (2-3mm gal) |
| | on GOJO corn contracts. | | | | |

(Gillon Dep.,[14] Ex. 15 (highlighting added; redactions as produced in discovery).)

43.    Before October 13, 2022, no one at ADM or BioUrja ever told anyone at GOJO that GOJO could not continue performing under the Agreement into at least 2023, nor did anyone from ADM or BioUrja otherwise claim that GOJO was in default. (Myers Dep., 51:13-16)

44.    BioUrja terminated the Agreement on October 13, 2022, and demanded $6,491,000 in payment. (Am. Complt., Ex. B (Doc. #8-2); Fife Dep., Ex. 33.)

---

[14] Adam Gillon is the Managing Director at BioUrja Capital. His responsibilities include managing BioUrja Capital's investment in BioUrja Renewables. (Gillon Dep., 11:9-18.) Cited excerpts of Mr. Gillon's deposition are attached as **Exhibit 7**.

## III.    LEGAL ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

A summary judgment motion should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under that standard, a party must support its assertion that no genuine dispute of material fact exists by citing to particular materials in the record or showing that the materials cited preclude a finding of disputed material facts. Fed. R. Civ. P. 56(c)(1). Because GOJO has met that burden, BioUrja must counter with new facts to avoid the entry of summary judgment. *See* Fed. R. Civ. P. 56(e). To avoid summary judgment, BioUrja must present significant, probative evidence demonstrating the necessity of a trial to resolve a material factual dispute. *Catrett v. Celotex Corp.*, 477 U.S. 317, 323 (1986).

GOJO is entitled to judgment as a matter of law because the undisputed material facts show that GOJO did not breach the Agreement. To establish a breach of contract, BioUrja must show the existence of a valid and enforceable contract, its performance of the contract, GOJO's breach of the contract, and BioUrja's resulting injury. *See Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 399 Ill. App. 3d 965, 973 (2010). The undisputed material facts establish that while GOJO and BioUrja were, indeed, parties to a valid contract, GOJO never breached that contract before BioUrja terminated it. Accordingly, the Court should grant judgment in GOJO's favor on BioUrja's breach of contract claim, the only claim remaining to be decided in BioUrja's operative FAC.

### B.    GOJO DID NOT DEFAULT ON OR BREACH THE AGREEMENT, BASED ON A PLAIN READING OF THE AGREEMENT.

There is no need to wade into parol evidence in this case because the Agreement's plain language is clear and unambiguous. Under Illinois law, "[t]he determination of whether a contract

is ambiguous is a question of law for a court to decide." *Richard W. McCarthy Tr. Dated Sept. 2, 2004 v. Illinois Cas. Co.*, 408 Ill. App. 3d 526, 535 (2011); *see also Emergency Med. Care, Inc. v. Marion Mem'l Hosp.*, 94 F.3d 1059, 1061 (7th Cir. 1996) (quoting *CSX Transp., Inc. v. Chicago & N. W. Transp. Co.*, 62 F.3d 185, 190 (7th Cir. 1995)) ("In interpreting a contract, Illinois law requires that 'clear and unambiguous terms in the contract must be given their ordinary and natural meaning.'"). "[T]he plain and ordinary meaning of the terms are the best indication of the parties' intent." *Intersport, Inc. v. Nat'l Collegiate Athletic Ass'n*, 381 Ill. App. 3d 312, 319 (2008). "Moreover, because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007). Ambiguity is not created simply because the parties disagree on a contract's meaning. *Publishers Res., Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). "Rather, ambiguity arises only when the language has more than one reasonable interpretation." *Owen v. Village of Maywood*, 2023 IL App (1st) 220350, ¶ 21, 235 N.E.3d 1198, 1203 (2023). Only if a contract is ambiguous may a court "consider extrinsic evidence to ascertain the parties' intent." *Gallagher*, 226 Ill. 2d at 233; *see also Curia v. Nelson*, 587 F.3d 824, 829 (7th Cir. 2009) (applying Illinois law, stating that if a contract is unambiguous, the court does not consider extrinsic evidence).

Here, the contractual terms are susceptible to only one reasonable interpretation: After the "grace period," which expired on February 28, 2022, GOJO could continue purchasing Ethanol under the Contract, but the purchase price would increase by 1% per month until it fully performed:

| Other: | If Gojo has a formula change that would require 40B 190 Proof (ADM Product Code 017653), buyer has the option to use this contract volume.  Pricing for SDA 40B 190 proof is $3.57/gal ($0.525/lb) rail delivered Barberton. |
| --- | --- |
| | Buyer has the option to extend this contract volume through February 28, 2022.  After the grace period, 1% of price will be added to the contract each month until the contract is consumed. |

(SOF, ¶ 6 (emphasis added).)[15]

The Amended Contract retained that plain and declarative language:

| Other: | If Gojo has a formula change that would require 40B 190 Proof (ADM Product Code 017653), buyer has the option to use this contract volume.  Pricing for SDA 40B 190 proof is $3.57/gal ($0.525/lb) rail delivered Barberton.<br><br>Buyer has the option to extend this contract volume through February 28, 2022.  After the grace period, 1% of price will be added to the contract each month until the contract is consumed.<br>2/2/21 – Amended term to reflect estimated shipment |
| --- | --- |

(SOF, ¶ 18 (emphasis added).)

████████████████████████████████████████████████████

██████████████████████████████████████████ Whether or not that was the

purpose behind the clause does not change the outcome. Even if that provision were intended to

███████████████████████████████████████████████████. On the

contrary, ███████████████████████████████████████

████████████████████████████████████████████

██████████████████████. The only limiting factor in GOJO's ability to perform after

February 28, 2022, was its willingness to pay an increased purchase price. But, on the Agreement's

face, that does not create a deadline by which performance was required to have been completed.

To adopt BioUrja's made-for-litigation reading of the Agreement would render the "Other"

provision meaningless. Under BioUrja's preferred interpretation (but, as explained below, contrary

to its own admissions), GOJO would have been in default on March 1, 2022 because it had not

pulled the full contract volume by February 28, 2022. If that were true, though, the "Other"

provision ***allowing*** GOJO to purchase Ethanol beyond February 28, 2022 as long as it paid a 1%

per month price increase would serve no purpose and be rendered meaningless. Such an

interpretation is contrary to basic tenets of contract interpretation. *Thompson v. Gordon*, 241 Ill.

---

[15] "SOF" refers to GOJO's Statement of Material Facts above. For ease of reference, citations presented in the argument refer back to the evidence contained in the SOF.

2d 428, 442 (2011) ("A court will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used."); *see also Hess v. Kanoski & Assocs.*, No. 309CV03334SLDJAG, 2014 WL 1282572, at *4 (C.D. Ill. Mar. 28, 2014), *aff'd sub nom. Hess v. Bresney*, 784 F.3d 1154 (7th Cir. 2015) (applying Illinois law) ("When parties agree to and insert language in a contract, it is presumed that it was done purposefully, so that the language employed is to be given effect.").[16]

The Agreement's plain and unambiguous language is susceptible to only one reasonable interpretation: GOJO was permitted to continue performing after February 28, 2022, so long as it paid a 1% price increase for each month it purchased after that date. Any other interpretation would not only contradict the Agreement's plain language, but also render the "Other" provision meaningless. With that interpretation, GOJO was not in breach of contract on October 13, 2022 when BioUrja terminated it; therefore, GOJO is entitled to a judgment as a matter of law on BioUrja's breach of contract claim.

### C.    EXTRINSIC EVIDENCE SUPPORTS GOJO'S CONTRACT INTERPRETATION.

Even if the Agreement is ambiguous, the undisputed extrinsic evidence supports GOJO's interpretation. "Extrinsic evidence…is appropriate when a contract is ambiguous." *Tech. Sec. Integration, Inc. v. EPI Techs., Inc.*, 126 F.4th 557, 560 (7th Cir. 2025); *see also Elda Arnhold and Byzantio, L.L.C. v. Ocean Atlantic Woodland Corp.*, 284 F.3d 693, 701 (7th Cir. 2002) (When considering extrinsic evidence under Illinois law, the factfinder should focus, in descending order of importance, on: (1) the parties' negotiations over the contract at issue; (2) their course of

---

[16] BioUrja's interpretation also is contrary to the testimony of its own expert witness, Dr. Scott Irwin, who testified that he began to calculate damages beginning October 13, 2022 when BioUrja terminated the Agreement, because *until that time BioUrja was operating under the expectation that GOJO could still purchase Ethanol from BioUrja*. (*See* Irwin Dep., 54:10-55:4.) Cited excerpts of Dr. Irwin's deposition are attached as **Exhibit 8**.

Although GOJO does not agree that Dr. Irwin's opinions are admissible, and GOJO intends to challenge the admissibility of those opinions if this case proceeds beyond summary judgment, he is correct about that particular undisputed fact—the parties expected GOJO's performance to be permitted beyond February 28, 2022.

performance; (3) their prior course of dealing; and (4) trade usage). Here, that evidence demonstrates that all parties understood—both at the time of contracting and subsequently—that GOJO could continue performing under the Agreement after February 28, 2022, as long as it paid the increased purchase price.

        **1.**        **BioUrja Terminated the Agreement At a Time When GOJO Still Was Permitted to Perform and Had Committed to Do So.**

Contemporaneous communications between the contracting parties and the parties' subsequent conduct demonstrate there is no genuine dispute of material fact that everyone understood and agreed that GOJO could continue performing under the Agreement even after February 28, 2022.

The undisputed record demonstrates that during the height of the COVID pandemic in June 2020, ADM and GOJO began discussing a supply agreement in which ADM would supply GOJO with Ethanol so that GOJO could continue producing hand sanitizer to meet increased demand. At the time, GOJO informed ADM it was unsure what its actual Ethanol needs would be during the 2021 calendar year, and, therefore, GOJO asked ADM to add a provision that would allow GOJO to continue performing under the Agreement beyond the 2021 calendar year. (SOF, ¶ 8.) ■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■



The parties' course of performance and contemporaneous communications further confirmed that understanding. In February 2021, the contracting parties agreed to the Amended Contract, which altered the contract term to more accurately reflect GOJO's estimated timeframe in which it would pull product. (SOF, ¶¶ 15-20.) In fact, the contemporaneous correspondence demonstrated that ADM understood there was no actual deadline for GOJO to perform and that GOJO would continue performing under the Agreement into 2022 *and even 2023*. (SOF, ¶¶ 21-23.) ADM's and GOJO's contract intent was clearly expressed in those communications and confirmed throughout ADM's deposition testimony.

Despite the contracting parties' undisputed intent for GOJO's performance under the Agreement to be permitted even into 2023, BioUrja terminated the Agreement on October 13, 2022. (SOF, ¶¶ 4, 24, 30-31, 44.) Based on the contracting parties' intent, GOJO was not in breach of contract at the time BioUrja terminated the Agreement. Indeed, both BioUrja's 30(b)(6) witness (Jordan Fife) and its retained expert (Scott Irwin) admitted that fact at deposition. For his part, Mr. Fife testified that GOJO was not in default before it received the Termination Letter:

| | |
|---|---|
| 25 | Q.   Is it BioUrja's position that on |

|  |  | Page 189 |
|---|---|---|
| 1 | October 12th of 2022, GOJO had not breached the |
| 2 | contract? |
| 3 | MR. BERNICK:  Objection; form. |
| 4 | Calls for a legal conclusion. |
| 5 | A.   I don't know the exact date.  But as |
| 6 | previously stated, default occurs when this letter |
| 7 | hits their inbox. |

(Fife Dep., 188:25-189:7.) Mr. Fife also admitted that ███████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ *See id.*,

██████████ 127:24-128:4; 154:3-12.)

Consistent with that testimony, BioUrja's expert testified that he used October 13, 2022 as the first date of his damages calculation because it was not until that date—when BioUrja sent the Termination Letter—that BioUrja changed its own expectation about when GOJO would perform under the Agreement. (*See, e.g.*, Irwin Dep., 49:10-51:18 (admitting that February 28, 2022—i.e., the date on which the grace period ended in the Agreement—was not a "key date" in his damages calculation because the parties still expected performance under the Agreement), 52:5-53:9 (admitting that the parties' expectation of performance under the Agreement changed when

BioUrja terminated the Agreement in October 2022); 82:6-10 (admitting that the Termination Letter signified the change in the parties' expectations of when performance would occur under the Agreement).)

BioUrja's counsel objected to several of GOJO's counsel's questions on the grounds that they called for a legal conclusion. Those objections were misplaced, though, as the question of whether and when a party breaches a contract are questions of fact. *See Zahdan v. Frontline Bus. Enter. Inc.*, 2024 IL App (1st) 221351, ¶ 31, 241 N.E.3d 1040, 1049, *appeal denied*, 244 N.E.3d 228 (Ill. 2024) ("Whether a breach of contract occurred, however, is a question of fact"). And here, the facts are undisputed, as even BioUrja's 30(b)(6) witness and proposed expert agree that GOJO was not in default or breach before BioUrja terminated the Agreement.

### 2.    As a Matter of Law, BioUrja Could Not Terminate the Agreement and Seek Damages.

The Agreement did not have a set date by which the parties were required to complete their performance. That is not a problem under Illinois law. Under Illinois' version of the UCC, "[t]he time for shipment or delivery or any other action under a contract if not provided in this Article or agreed upon shall be a reasonable time." 810 ILCS 5/2-309(1). Further, 810 ILCS 5/2-309(2) states that "[w]here the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party." And, finally, subsection (3) of the statute provides that "[t]ermination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party."

Reasonableness is the key in all three subsections. Here, the parties had numerous discussions about timing, and never once did BioUrja object to performance into 2023, until it terminated the Agreement on October 13, 2022. And it terminated the Agreement without first

providing GOJO with *any* notice (let alone reasonable notice). By statute, based on the undisputed facts in this case, the period for performance under the Agreement had not expired when BioUrja decided it no longer wished to have the Agreement remain in place. On those facts, BioUrja has no basis to seek any relief from GOJO for breach of contract.

3.    **Under the *Contra Proferentem* Doctrine, Any Ambiguity in the Agreement Is Construed Against BioUrja.**

Beyond the Agreement's plain language, the extrinsic evidence in the record that establishes that GOJO was permitted to perform past February 28, 2022, and the Illinois UCC, the doctrine of *contra proferentem* further supports summary judgment in GOJO's favor. It is undisputed that GOJO did not draft any portion of the Agreement. (SOF, ¶¶ ██, ██ 19.) Specifically, the parties all agree that ██████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████

Under Illinois law, the doctrine of *contra proferentem* "dictates that ambiguous terms in a contract be construed against the drafter." *Tranzact Technologies, Ltd. v. Evergreen Partners, Ltd.*, 366 F.3d 542, 546, n.2 (7th Cir. 2004); *Homeowners Choice, Inc. v. Aon Benfield, Inc.*, 938 F. Supp. 2d 749, 757 (N.D. Ill.), *aff'd*, 550 F. App'x 311 (7th Cir. 2013) (under Illinois law, "the doctrine of *contra proferentem*…states that ambiguous provisions of a contract are construed against the drafter."). Because BioUrja's predecessor-in-interest, ADM, drafted the Agreement, any ambiguity regarding the "Other" provision and whether GOJO was permitted to perform after February 28, 2022, must be construed against BioUrja and in GOJO's favor. *Camelot Care Centers, Inc. v. Planters Lifesavers Co.*, 836 F. Supp. 545, 549 (N.D. Ill. 1993) ("In sum, the assignment of meaning to the express terms of the [contract] will be guided by the principle that

any ambiguity will be construed against Prudential and Planters (and *Nestle* as Planters' successor.)").

GOJO has presented—at a minimum—a plausible interpretation of the Agreement. As a matter of Illinois law, that interpretation controls.

### D.     ADM, AND THEN BIOURJA, WAIVED ANY RIGHT TO REQUIRE GOJO TO PERFORM UNDER THE AGREEMENT BEFORE BIOURJA'S TERMINATION.

Even if the Court were to find that the Agreement required GOJO to complete performance by a date certain, and even if that date certain were February 28, 2022, ADM and BioUrja both waived any right to enforce GOJO's performance by that deadline. Waiver is the "intentional relinquishment of a known right and may occur either through an express statement or be implied through the conduct of the waiving party." *Cent. Tower Exch. Corp. v. German Motor Parts GmbH*, 518 F. Supp. 3d 1233, 1241 (C.D. Ill. 2021) (quoting *Ryder v. Bank of Hickory Hills*, 146 Ill. 2d, 98, 104 (1991)).

The undisputed facts fall squarely within Illinois black letter law on waiver. Under Illinois law, "a contracting party may waive provisions beneficial to it or waive strict compliance by conduct or actions indicating that strict compliance with a particular provision will not be required." *Tri-State Disposal, Inc. v. Vill. of Riverdale*, 617 F. Supp. 3d 893, 904 (N.D. Ill. 2022) (quoting *In re Krueger*, 192 F.3d 733, 738 (7th Cir. 1999)). Further, "[w]here the time fixed by the contract for performance is permitted to pass, both parties concurring, the time of performance thereafter becomes indefinite and one party cannot rescind until full notice and a reasonable time for performance is given." *Cent. Tower Exch. Corp.*, 518 F. Supp. 3d at 1242. Finally, a "party to a contract may not lull another into false assurance that strict compliance with a contract duty will not be required and then sue for noncompliance." *Rice v. Meneely*, 2023 IL App (5th) 220650-U, ¶ 19.

Through their statements and conduct, both ADM and BioUrja waived any right to enforce any provision purporting to require GOJO to fully perform by February 28, 2022, or by any date certain. Specifically, ADM testified there was no deadline for GOJO's performance and that it understood GOJO could continue to perform under the Agreement after February 28, 2022. (SOF, ¶¶ 21-23.) ADM's communications with GOJO further evidence that understanding. On September 14, 2021, ADM emailed GOJO, asking if GOJO thought it would continue performing under the Agreement into 2023:

| Message | |
| --- | --- |
| From: | Chughtai, Haithum [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=65321C6DAEA143189D8A024E7CD0C359-CHUGHTAI, H] |
| Sent: | 9/14/2021 7:21:49 PM |
| To: | Myers, Abbey [Abbey.Myers@adm.com] |
| Subject: | Re: forecast |

Hello Abbey,

I can call you tomorrow to offer some more insight but it is likely if we keep our entire current contracted volume we will be going into 2023.

I believe we recently did issue you a PO for October.

Sent from my iPhone

On Sep 14, 2021, at 2:56 PM, Myers, Abbey <Abbey.Myers@adm.com> wrote:

Hi Haithum,
I know the answer but wanted to check. Im being asked to update how we have your contract broken out. Right now I have it scheduled / forecasted for approx. 23 cars per month. But with no August and Sept shipments I probably need to readjust. Based on what you see / hear do you think we are looking at this contract going through Q1 2023 at this point or still end by Dec 2022? I just need to try my best to weight it to the best of my / our ability.

Thank you!

(*Id.*, ¶ 23.) GOJO responded in the affirmative, and ADM did not protest. (*Id.*) Thus, even if the Agreement required GOJO to complete performance by a date certain, ADM waived any such requirement.

BioUrja likewise independently waived any purported contractual requirement that GOJO fully perform by any date certain prior to 2023. After BioUrja assumed the Amended Contract in November 2021, it also acknowledged that GOJO could continue performing beyond February 2022. For example, on March 21, 2022, BioUrja sent an email to GOJO stating that it would start

adding the 1% price increase and asked GOJO if it wanted BioUrja to send an amended contract each month reflecting the new price:

> Hi Haithum,
>
> Hope you had a nice weekend!
>
> I know we've had several discussions and have not been able to come to a fair resolution and I'm sure we will continue to discuss.  Per the language in the contract, I need to start the carry calculation this month.  Do you want me to send you an amended contract each month with this calculation?
>
> Please let me know what you'll need from your side.

(*Id.*, ¶¶ 33-35.) BioUrja attached an updated contract reflecting the price increase. (*Id.*, ¶ 36)

BioUrja also admitted it never told GOJO it was required to complete performance by a certain date (*Id.*, ¶ 32), and there is no evidence in the record demonstrating that BioUrja *ever* claimed GOJO was in breach of the Agreement after February 28, 2022 until BioUrja terminated the Agreement. The parties' communications and course of performance after BioUrja assumed the Amended Contract made clear to GOJO that BioUrja understood GOJO could continue to perform past February 28, 2022.

BioUrja's internal documents and communications further reflect that understanding. As of April 22, 2022, BioUrja categorized the Agreement as a "significantly delayed contract," rather than a defaulted or even "high likelihood default contract." (*Id.*, ¶ 37.) Shortly after BioUrja acquired the VCP ethanol plant and assumed the Amended Contract, BioUrja's employees communicated internally that it was likely the GOJO contract would last into 2023. (*Id.*, ¶ 38.) ***Then, in August 2022, BioUrja communicated internally that it was "stringing [GOJO] a long [sic] in order to keep them on the hook for their existing high prices contract."*** (*Id.*, ¶ 40) (emphasis added). This is exactly the behavior that the waiver doctrine is designed to prevent. *See Rice*, 2023 IL App (5th) 220650-U, at ¶ 19 (finding party "waived her right to demand strict compliance of [an] agreed order by expressly acknowledging that the COVID-19 crisis was a reason to be patient and lulling the petitioner into believing that the agreed order was still in place

31

even though he missed the March 20, 2020, deadline, he missed the April 2020 payment deadline, and his payments were less than the $1500 for six additional months in 2020.").

The undisputed evidence demonstrates that, as of August 2022, BioUrja understood and communicated to GOJO that GOJO still could continue to perform. (SOF, ¶¶ 40-41.) And, as of October 4, 2022, BioUrja *still* considered the Agreement to be "significantly delayed," but not in default, and expected it would carry over *into 2025*. (*Id*., ¶ 42.) Despite BioUrja's documented belief that GOJO could continue performing through 2022 and beyond, and without providing any notice to GOJO to the contrary, BioUrja terminated the Agreement on October 13, 2022 without warning, and demanded GOJO immediately pay $6,491,000.[17] (*Id*., ¶ 44.)

Both ADM's and BioUrja's statements and conduct demonstrate there is no genuine dispute of material fact that they both waived any right to require "strict compliance" with any purported contractual requirement that GOJO fully perform under the Agreement by a date certain prior to *at least* 2023. *See Tri-State Disposal, Inc.*, 617 F. Supp. 3d at 904. GOJO is entitled to summary judgment on this basis as well.[18]

---

[17] It is noteworthy that BioUrja's claimed (and entirely speculative) damages have fluctuated tremendously and inexplicably during the course in this dispute—from $6.4 million in the Termination Letter, to $12.2 million in the original Complaint [ECF No. 1], to $27.1 million in the Amended Complaint [ECF No. 8], down to nearly $19 million in its recent expert report.

[18] BioUrja attempted in discovery to establish that the 1% per month price escalator cannot mean that the time for performance could ever be indefinite because, at some point, the contract price would become cost prohibitive. That argument fails for several reasons.

*First*, the question is not whether the agreement was entirely open-ended, but whether it was intended to continue to a time after BioUrja unilaterally terminated it. The undisputed evidence is that there was never any disagreement that the agreement extended until at least 2023, if not 2025 and beyond.

*Second*, BioUrja never offered any expert testimony defining whether or when a 1% per month price escalator would become cost prohibitive. It is just a speculative argument without any factual or legal foundation.

*Third*, it is impossible to determine today (or tomorrow, or a year from now, etc.) whether an ethanol contract will become cost prohibitive without knowing all the factors that could impact pricing in the future. Another pandemic, climate change, war in corn-growing countries, among myriad other factors all play a role in ethanol pricing. (*See* Lerner Dep., 177:5-178:24. Cited excerpts of Mark Lerner's deposition are attached as **Exhibit 9**.) Rather than being an albatross for the purchaser, a contract entered in 2020 that limits price increases to only 1% per month price could prove to be a bargain in years to come if the price of ethanol exceeds 12% per year. And such a price increase in commodities is neither unprecedented nor unrealistic.

*Fourth*, GOJO's waiver argument does not hinge on the Agreement being open ended. The question is whether GOJO was lulled into not performing only to have BioUrja pull the rug out from under it, which is precisely

## IV.     CONCLUSION

For the foregoing reasons, GOJO respectfully requests that the Court enter judgment in its

favor as a matter of law, based on the undisputed facts.

Dated: May 23, 2025                     Respectfully submitted,

                                        ICE MILLER LLP

                                        /s/ *Joshua A. Klarfeld*
                                        Joshua A. Klarfeld (Ohio Bar No. 0079833)
                                        600 Superior Ave. East, Suite 1300
                                        Cleveland, Ohio 44114
                                        Telephone:     (216)-394-5063
                                        Joshua.Klarfeld@IceMiller.com

                                        *Attorney for Defendant GOJO Industries, Inc.*

---

what happened here. By its own admission, BioUrja was "***stringing [GOJO] a long [sic] in order to keep them on the hook for their existing high prices contract***." (SOF, ¶ 40 (emphasis added).) After leading GOJO to believe it could continue to perform into at least 2023, BioUrja unilaterally and without warning changed course when it terminated the Agreement on October 13, 2022. That is the very definition of waiver, irrespective of some hypothetical scenario where a contract could become cost-prohibitive in the future.

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION</u>

I hereby certify pursuant to Local Rule 7.1, that the Argument section of Defendant GOJO

Industries, Inc.'s Motion for Summary Judgment is fewer than 15 pages in length.

_/s/ Joshua A. Klarfeld_
Joshua A. Klarfeld

_Attorney for Defendant GOJO Industries, Inc._

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| BIOURJA RENEWABLES, LLC, | **)** | |
| | **)** | |
| Plaintiff, | **)** | |
| | **)** | No. 1:23-cv-01280-MMM-RLH |
| v. | **)** | |
| | **)** | |
| GOJO INDUSTRIES, INC., | **)** | |
| | **)** | |
| Defendants. | **)** | |
| | **)** | |

<u>**CERTIFICATE OF SERVICE FOR SEALED DOCUMENTS**</u>

I hereby certify that on this 23rd day of May 2025 a true and correct copy of the foregoing

document was electronically filed with the Clerk of Court using the ECF system. Parties may access

this filing through the Court's system.

Dated: May 23, 2025

Respectfully submitted,

ICE MILLER LLP

/s/ *Joshua A. Klarfeld*

Joshua A. Klarfeld (Ohio Bar No. 0079833)
600 Superior Ave. East, Suite 1300
Cleveland, Ohio 44114
Telephone:     (216)-394-5063
Joshua.Klarfeld@IceMiller.com

*Attorney for Defendant GOJO Industries, Inc.*